Our fifth case for today is United States v. DaJuan Key. Mr. Thompson. Thank you, Your Honor. May it please the Court. My name is Michael Thompson. I represent Defendant Appellant DaJuan Key. Mr. Key's appeal raises two issues that are each sufficient to vacate his conviction and remand for proceedings at the District Court. I'll begin with the time the law enforcement officers entered Mr. Key's hotel room, they did not have probable cause to believe that any crime whatsoever had actually been committed. They were reliant on... So why are we putting to one side the fact that they have heard from their fellow officer that the girl is down at that particular motel and that she's from Wisconsin and that this the only Wisconsin person there? And, obviously, the second question is why does probable cause matter if, as the District Court did, you credit the testimony of the officers that he consented to let them come into the room? I'll address the first part of that first. We shouldn't put it to the side. It just doesn't give them any reason to believe there's been a crime committed. They might have believed that the minor was there or had been in that hotel room, but there's nothing inherently illegal about that. The call of the minor placed to her mother only said that she had apparently voluntarily traveled to Illinois with this man and now wanted to come home. Is that how the officers interpreted that call? I thought that they thought that they were being told about a potential kidnapping. They were treating it as a potential kidnapping, but the information did not say that she was there involuntarily. And now, with everything they know ex post, it's easy to say that perhaps there was some sort of crime afoot, but they didn't know that at the time. All they knew was that a girl had come to Illinois and was staying in a hotel and now wanted to come home. They were certainly within their rights to see if she was in that hotel room. And, as Your Honor noted, the District Court did find that the defendant gave permission for the officers to enter the hotel room to look for the girl. They did that. Knew exactly who they were asking about and knew where she was. Correct. He informed them that she actually wasn't sure where she was, but thought she had gone to the McDonald's down the street. The officers were allowed to come in at that point, certainly. They were allowed to look to see if the girl was in there, as the defendant gave them permission to do. Once they did that, they should have left. The consent to enter the... They see all this sketchy stuff when they're looking through the room. There's the Samsung tablet open to back page. There is the condom refuse around the room. There's a lot of disturbing material in that room. Although, respectfully, Your Honor, sketchy isn't exactly a legal term. They need probable cause to believe that those items are indicative that a crime had taken place. I understand, but I'm accumulating it. We've got the Masterson call. We've got, you know, an interpretation that this girl is upset that she wants to come home. Why is she calling her mother? And her mother's calling the police. I mean, it accumulates. But it doesn't accumulate. What did they do wrong? They're looking through the room and they see some things in plain view. But what they saw, Your Honor, was not indicative that a crime had actual... Or at least, it wasn't indicative of probable cause. And nothing happens to them right at that moment either. They just go down to the car with Creighton. One of the officers leaves with Ms. Creighton, the other female who was in the room voluntarily. And Creighton says, we're engaged in prostitution and he's our pimp. And while that's going on, other officers are in the room searching it. Officer Trueheart testified that he actually conducted a full search of the room, opening drawers, checking in the closets, in the bathroom, things that were not within the scope of their consent to be in the room to look for the girl. Right, but the focus is on what was found in plain view. Could I follow up on Judge you explain to us a little more precisely the timing here about spotting the evidence in question in plain view and Creighton's admission that they were involved in prostitution and then the seizure of that evidence? As I understand it, the testimony from the officers was that they initially saw the items, the tablet and the cell phones, credit cards, condom wrappers, et cetera, basically immediately upon entering the room. It's unclear to me whether they immediately collected those or waited some time, but I believe they were collected before any statements were taken or perhaps simultaneously with any statements from the female that was in the room. Is that addressed specifically in the transcript or in the district judge's findings? As far as I can tell, it was not clearly defined, Your Honor. I think it's ambiguous in the transcripts. And the other timing issue that you quickly went over, Creighton goes down to the car with the one officer and makes these statements. And I thought I remembered reading that that officer then calls back to the hotel room and basically says, this is what I've found out. And that's when the more thorough search starts. But I don't know whether the record is clear. And that may be, Your Honor. But those items weren't taken as a result of the more thorough search. They were the more thorough search. But I want to know, does the more thorough search start, maybe the government can answer this question or tell me that there's no evidence. Does the more thorough search start after the officer down at the car calls back and says, hey, he's a pimp. These two women are being prostituted. And they know that one of them is underage because we've already established who she is. And they know about the reputation of that particular motel, etc. If the more thorough search doesn't start until after the Creighton statements, that would strike me as a different case from the minute they leave, all of a sudden they start turning the room inside out. I agree that it is different, but I'm not sure that difference is meaningful in this case because the items that were collected here weren't part of that more thorough search. They were items the officers decided to collect just upon seeing them. And I think that's without any reference to anything that Ms. Creighton said. They decided that they were suspicious. Certainly, maybe they were. Well, it was all at one time, though. I mean, they didn't come back, did they? No. They were still in the room. They never left the room. Even after, frankly, Your Honor, they should have left the room. They just got more information. They got more information from Creighton. And by the time they received that information, they should have already left the room because they already served their purpose for which the consent to enter the room had been granted. Wait, wait. Should have left the room? Where was she going to go back to? Ms. Creighton? Yeah. She could certainly go back into the room if she wanted to once she had finished talking to the officer, but the officer's permission to enter the room was limited. Back to her pimp, as was described. If she wanted to, or she could not. She could go with the officers. But the officers didn't have any valid basis to be present in the room once they conducted their limited search to determine if the minor was there. So anything they did after that was beyond the scope of their permission to enter and should have required a warrant or some sort of exigency, neither of which they had. That would be, I frankly fail to understand the rationale that they should have left the room and then come back again. Well, to come back, they would have needed a warrant, Your Honor. They should have left the room because they said, can we come in to look for this particular individual? And the defendant apparently said, yes, go ahead. That search takes five, ten seconds. That's the scope that they were allowed to be there for. The search at all should not have occurred without some sort of intervening event, a warrant, additional consent. Intervening event? Was Clayton describing what the situation was? But they should have already left before that happened. And I think these items were also taken before that happened. They were present in a hotel room without consent at that point. If you want to say a quick word about your instruction point, I can do that now. I would, Your Honor. The instruction, the issue with the instruction is that it is a valid statement of the law under certain circumstances, but it's ambiguous the way it was worded here to imply more than the law actually permits. But let me break this down because as I understand this crime, once they've crossed the state line, once they've traveled and crossed the state line, the crime is complete. They don't have to, with the right intent, correct? Yes. And you also agree that her voluntary participation in the travel is neither here nor there. That's not a relevant fact. His only point is once they get there, she's prostituting herself voluntarily. But I don't see why that's relevant to the crime here. It's the traveling with the intent that's the crime. And whatever she does when she gets there, whether she is prostituting herself, whether she's not, whether she goes to school, who cares? The point is, Your Honor, that the defendant has to have the intent at the time the travel occurs that the minor would engage in these prostitution or other illegal activities. But if she's doing that on her own, without discussing it with him, without telling him about it, without any way for him to know what's going to happen, if she's the one voluntarily of her own initiative, of her own volition, intending to do this prostitution without telling him about it, then that would make him not guilty. Right, right. But why doesn't the elements instruction take care of that problem? Well, the elements instruction does say that, but this instruction sort of undercuts that in light of- I understand the argument that it might be spun that way. Is there any indication here that the government tried to spin it that way? Not directly, but certainly on its face, the wording of the instruction says, hey, don't even concern yourself with what she was voluntarily doing on her own. And when the arguments were, hey, he didn't intend to do this, this was her own doing, and then the judge tells the Did, as I understand it, the position you're taking on appeal is that the real problem is just the last phrase, otherwise voluntarily participate. Yes. Right? Did, with the objection at trial was that the whole instruction was bad? Correct, Your Honor. Did anybody propose the more limited version that you're suggesting on appeal? Not explicitly, Your Honor. Okay. I guess I'll just tell you, it's not impossible, but I'm generally reluctant to take steps nobody asked them to take. I understand that, Your Honor, but I believe that in this case the court should have limited it based on counsel's explanation of what the defense was, that the court should have realized that there could have been a more limited and still factually correct statement of the law given for that consent part of it. Thank you. Thank you. Thank you, Mr. Thompson. Ms. Sawyer. Good morning. May it please the court, Katherine Sawyer on behalf of the United States. I'd like to begin with a timing argument raised by the court. I think I can clarify some of this. Judge Koehn was correct in his question, and I think it is a salient point here to recognize that when the officers entered the motel room with the defendant's consent, all of the items that they seized were immediately apparent to them in plain view in that motel room. Any subsequent, and I think the court's language was more thorough search that followed Ms. Creighton's statement, did not recover any additional evidence. The only evidence we're really talking about here was the item, was the evidence that was in plain view upon their initial entry into the room. So I take it the government's view is even if any one of these things might have been already knew, including the circumstances of the girl's travel from Wisconsin to Illinois, the reputation of the motel, the nature of the objects, back page, the used condoms and so on, that was enough to raise, you know, enough concern that they could collect it. Absolutely, Your Honor. When taken together, and I think that the court has used the correct terminology here, it is a cumulative effect that this evidence had on the officers at the time that they saw it, and it's certainly later at the time that they seized it, and that is the call from the mother to report that her daughter had been taken, probably against her will, from Wisconsin. Does the record show the mother says probably against her will? There was some indication, and I don't recall what the mother said, but what was communicated to the officers at the time was that there was some indication that she had been taken against her will, and was being held at the Romeoville Super 8 Motel, which each officer testified that they had, in their prior experience, come to learn was often used as a location for prostitution activity. They also, upon arriving at the motel, found again only that one car with the Wisconsin license plates. They ran those license plates. They came back to an Enterprise rental car location in Wisconsin. The officers also testified that, based on their training and experience, rental cars were used. She was crying when she called her mother and she said, I want to come home. That is correct, Your Honor. Can you clarify the timing regarding the Creighton conversation? Yes, Your Honor. And the seizure of these items? Yes, Your Honor. The officers initially enter the room. Upon entering the room with the defendant's consent. That's when it's done, according to the district court, with consent. The door's propped open a little bit, maybe for her to come back from the McDonald's, for all I know, but it's open a little bit. Exactly, Your Honor. That was the district court's finding, and my understanding is the defendant is not, at this point, challenging the consent decision. So at the time that the officers enter the room with consent, there are three police officers in that room. One of them focuses her attention on Ms. Creighton, who is asked for an identification. She says she thinks it's in the car. At this point, the officers have already seen, in plain view, the items which they subsequently seized. One of the officers goes with Ms. Creighton to the car to retrieve this identification. The other two officers remain in the motel room talking to Mr. Key. Consent at no point is ever revoked by Mr. Key, and I don't think that's in dispute. So those officers remain in the motel room where these items are in plain view, continuing their conversation with Mr. Key. At this point is when the other officer is talking to Ms. Creighton. While they are at the car, Ms. Creighton is asked whether she is working for Mr. Key. There is testimony, and I can direct the court to, I believe it's pages 20 and 21 and 49 and 50 of the transcript, and then subsequently pages 87 and page 90, where the timing of these events are discussed. So Sergeant Masterson, the woman who goes with Ms. Creighton to retrieve the identification, has one conversation in which Ms. Creighton says, she advised me that the defendant was posting them on Backpage for Prostitution, meaning making ads for them. There is information from Ms. Creighton to the same officer that the victim is across the street at a McDonald's. So they go in order to confirm that the victim is, in fact, at this McDonald's. At that point they take the victim into custody, is that correct? Protective? Or somebody else comes up and all these officers are driving up every two minutes. Yes, Your Honor, there is another officer, I believe his name was Swiatek or Swiatek, who also was sent to the McDonald's in order to respond to look for the victim. While that's happening, Ms. Creighton also informs the same officer that the defendant was using the tablet computer in the hotel room to post both girls to Backpage.com. At that time the officer radios back to the two who are in the motel room and say, take him into custody, or take him to the station. I don't know what the language was, but indicating we now have this statement and they take him into custody. So is there a further search incident to the arrest? There is a search incident to the arrest of the defendant. I believe they recovered some identification, hotel keys, maybe some more prepaid credit cards. But the real salient point here and the takeaway is that there was a wealth of information available to the officers at the very first moment where they see this evidence, all the things we've already discussed. The call to the mother, the distress, the motel known to them for prostitution, the back page add on the tablet, which is suggestive again to those officers of prostitution. It's a classic everything and a classic example of it. Yes, absolutely, Your Honor. And then in combination with the things that this court has already identified, those prepaid credit cards, the condoms, et cetera. Then you add to that the information provided by Ms. Creighton. And by the time those officers seize those items, they just have a wealth of evidence to suggest that it is in fact prostitution that's occurring in this room. So maybe you could talk a little bit about this instruction. It's a troublesome instruction. It really would have been nice if the district judge, having listened to counsel's explanation of her concern, which seemed pretty clear actually, counsel's explanation, to have added that or otherwise voluntarily participated phrase without any kind of limitation, just an invitation to trouble. I do think that the same effect could have been achieved by perhaps omitting that, but I don't think that that language is in any way a basis for reversal here. I don't think that it in any way misled viewing the instructions as a whole, misled the jury as to what it had to find. So suppose, to take Mr. Thompson's description of the defendant's position, suppose this girl, suppose he picked her up in Wisconsin and traveled with her to Illinois without having any idea that she had going into the prostitution business in mind and without having any intent himself of moving her in that direction. Maybe he's just decided to travel with her for the day for whatever reason. That wouldn't violate the statute. The statute's violated only if the travel is with the intent to prostitute the minor. That's correct. So the possibility that he's presenting is the theory of his defense isn't really before the jury, is it? Well, I think if that had been the defense that he propounded at trial, I think that that's the universe we would be in. The fact of the matter is, and I think that the record supports, the fact that it wasn't that clean, and his argument at trial wasn't, I didn't know anything about anything and this was completely behind my back. He asked a lot of questions that went to an area that really did start to sound like consent, questions like it was April who intended to commit prostitution, April is autonomous, and he shifted, I'm sorry, she, trial counsel, shifted the discussion or the focus from what did the defendant know or defendant knew nothing to what is it that April was doing and how was she autonomous and how was she acting voluntarily and how was she able to leave if she wanted to or et cetera. And so he never took on at trial the government's evidence of specific intent on the defendant's part, but rather shifted that to the victim. And so because of that, the government's position was that they'd muddied the waters with respect to that evidence, and so the instruction was necessary in order to aid the jury in determining how it could consider that defense evidence and argument. So where did that language come from for that instruction? Was it something that the prosecution proposed, Judge Kendall came up with, or what? My recollection at this point, Your Honor, we did ask for an instruction that consent was not a defense to the crime. My recollection, and again. Well, the instruction contained that it was tendered, the preliminary instruction, or not preliminary instruction, tendered. It had citations to language in other cases. It did, Your Honor, and we requested, the government requested an instruction that essentially said that consent is not a defense to this crime. I do not recall, and I can submit if the court would like a letter expounding on this, whether we actually asked for that clause, the voluntarily participated clause. But the consent or voluntary participation of April to travel to engage in prostitution is not a defense to the charges, is the last piece of that instruction, and we think a correct statement of the law. And any prejudice argument, I think, is easily defeated by the fact that they were also instructed correctly on the law with respect to the burden that the government bore, and that is that the defendant intended that April engage in prostitution at the time that he transported her from one state to the other. And obviously, the jury is presumed to follow those instructions, and there was, as the district court noted, overwhelming evidence of the defendant's specific intent. We have this little bit from the jury instruction conference in the appendix to the blue brief at pages 12 and 13, but I can't quite tell where the origin, because the judge is just saying, okay, this instruction, that instruction, and then the instruction that whether she consented, I held in reserve to see how the trial goes, and it's on the next page, which looks like 437 maybe of the transcript. She says it's necessary. She cannot voluntarily participate to travel to engage in prostitution. Anyway, so maybe we'll track it down. Well, thank you. If there are no further questions, the government respectfully requests that the court affirm the conviction of the defendant. All right. Thanks very much. Mr. Thompson, I think you may have run out of time, but I'll give you a minute. I have, yes. Thank you. Oh, okay. All right, you're fine? All right, well then. If I could briefly address that last point on the jury instruction, Your Honor, if Your Honor is willing to give me the time. If you insist. Yes, I'm willing to give you a minute. The counsel alleged that the theory of the defense was unclear, but it was presented to the jury in a way that was a way that could undermine the government's proof beyond a reasonable doubt. On page 495 of the closing argument, counsel for Mr. Key argued that April was in the control of the room. April was telling DeJuan, don't come in here. I don't want you to know what I'm doing. That argument alone is sufficient to give the jury an idea that the defense is April is doing this on her own. Mr. Key doesn't know about it, and if he doesn't know about it, then he doesn't have the intent that's required at the time of the trial. To travel, okay. So it was presented to the jury in an articulable way, Your Honor. All right.  And with that, I would ask the conviction be over. Thanks to both counsel. We'll take the case under advisement.